UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| COX OPERATING, L.L.C., ET AL.<br><br>VERSUS<br><br>SETTOON TOWING, L.L.C., ET AL. | C.A. NO. 17-1933 c/w 17-2087<br><br>SECTION: N<br><br>JUDGE ENGELHARDT<br><br>MAGISTRATE JUDGE NORTH |

**MEMORANDUM IN SUPPORT OF
SETTOON'S MOTION FOR PARTIAL SUMMARY JUDGMENT
<u>REGARDING DAMAGE ELEMENT: "NO CLAIMS BONUS"</u>**

According to Cox's latest Rule 26 supplemental disclosure, Cox now claims a new element of damages: the loss of a "no claims bonus" in the amount of $1,169,653.60. Cox contends that its underwriters prepaid the "no claims bonus" to Cox for the policy period in which the Allision occurred. As a result of the Allision, Cox made a claim against its underwriters. Having made the Allision claim (and having made no other claims during the same policy period), Cox then had to return the $1,169,653.60 no claims bonus to the underwriters. Exhibit A. For purposes of this motion for partial summary judgment, Settoon will accept Cox's contentions as undisputed facts.[1] Even if these facts are true, however, and assuming for purposes of argument that Settoon is found completely liable for the Allision, as a matter of law the "no claims bonus" predicated on the insurance contract between Cox and its underwriters is not a recoverable element of damages. Accordingly, this Court should grant Settoon partial summary judgment dismissing Cox's claim for the "no claims bonus."

---

[1] Should this motion not be granted and the "no claims bonus" issue proceed to trial, Settoon will not accept these contentions as true, and will require strict proof.

{N3547162.3}   1

**I.      Whether sought under general maritime law or under OPA, Cox cannot recover damages that are neither proximately caused by nor "result from" the Allision.**

Cox has sued Settoon because of an allision that occurred on September 13, 2016 between the MEGAN B. SETTOON and Cox's Well located in the Quarantine Bay field. Cox has asserted claims for damages under admiralty and the Oil Pollution Act ("OPA"). R. Doc. 1, ¶ 1, ¶¶ 43-50, & ¶¶ 54-58.

Schoenbaum summarizes basic damage principles under general maritime law as follows:

> [T]the principle of proximate causation, that a negligent tortfeasor is responsible only for indirect injuries that are reasonably foreseeable, applies in admiralty. This analysis, which is carried out on a case by case basis, is a means of limiting the non-intentional tortfeasor's duty by holding that based on moral, economic, and social concerns, some risks—indirect losses caused by the accident—are outside the scope of the duty imposed by a rule of law. This concept may be applied to purely economic losses such as extra expenses of grain dealers caused by the disruption of river traffic on a river. It may also apply to indirect personal injuries, such as the case of a plaintiff who slips and falls as a result of oil spilled six miles upriver. This proximate cause or duty-risk analysis is not a bright line test. It can only be applied on a case by case basis considering the remoteness and indirect nature of the injury, the type of injury involved, and the extent to which it should have been reasonably foreseeable to the tortfeasor considering the nature of his negligent conduct.

Economic losses and remote claims, 2 Thomas J. Schoenbaum, Admiralty & Mar. Law § 14-7 (5th ed.) (footnotes omitted). In *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927), the Supreme Court held that an admiralty plaintiff cannot recover negligently inflicted economic losses where there is no physical damage to plaintiff's property. *See also Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp.*, 71 F.3d 198, 201 (5th Cir. 1995). However, "[S]imply meeting the requirement of showing physical damage to a proprietary interest does not automatically open the door to all foreseeable economic consequences." *Id.* at 203.

Under OPA, the strict limitation of *Robins Dry Dock* is lifted. A responsible party under OPA is liable for certain damages that "result from" an oil spill incident. 33 U.S.C. § 2702(a) Subsection (b) of 33 U.S.C. §2702 sets forth the kinds of damages that are covered by OPA. According to 33 U.S.C. §2702(b), the following types of *economic* losses are recoverable:

> [E]conomic losses resulting from destruction of, real or personal property, which shall be recoverable by a claimant who owns or leases that property.

33 U.S.C. § 2702(b)(2)(B). And:

> Damages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant.

33 U.S.C. § 2702(b)(2)(E). Since Cox was allegedly the owner of the damaged well and its "no claims bonus" is neither loss of profits nor impairment of earning capacity (recoverable under § 2702(b)(2)(E)), its economic losses are theoretically recoverable under either general maritime law or OPA's provision § 2702(b)(2)(B), provided they meet the standard of causation under either law.

## II. "Proximate cause" versus "result from".—a distinction without a difference.

To summarize, causation under general maritime law is judged by a "proximate cause or duty risk analysis," Schoenbaum, *supra*, whereas under OPA economic losses sustained by the owner of damaged property must "result from" an oil discharge. In *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 168 F. Supp. 3d 908 (E.D. La. 2016), Judge Barbier considered whether the "result[ing] from" language in 33 U.S.C. § 2702(a) is distinct from the "proximate cause" standard. The ruling by Judge Barbier involved claims by several companies involved in supporting offshore drilling activities. These companies brought suit against the defendant BP claiming that they sustained economic losses caused by the drilling

moratorium imposed by the federal government following the Deepwater Horizon well blowout and oil spill. BP filed a motion to dismiss the moratorium claims, arguing that such claims did not "result from" the discharge of oil nor were the losses "due to" injury to property. BP also argued that OPA only compensates losses that are "proximately caused" by an OPA incident.

Judge Barbier concluded that despite the fact that the moratorium was imposed because of the well blowout, the plaintiffs' losses from the drilling moratorium did not "result from" the oil spill:

> There can be no doubt that the Government would not have imposed the Moratorium had the HORIZON/Macondo blowout and oil spill not occurred. However, the Moratorium addressed the risk of possible future blowouts and oil spills from wells other than Macondo and was motivated by perceived weaknesses of industry-wide safety measures. …..Plaintiffs' losses did not *result from* the discharge or substantial threat of discharge of oil from the Macondo Well; they resulted from the perceived threat (whether substantial or not) of discharge from other wells.

*Id.* at 916 (emphasis added). Because of his interpretation of the actual "result from" language of 33 U.S.C. § 2702(a), Judge Barbier found it unnecessary to decide whether or not OPA incorporated a proximate causation standard. *Id.* at 918.

**III. Case law holds that increased insurance premiums are not recoverable damages following an accident.**

While there appear to be no cases precisely on point of a "no claims bonus," the overwhelming majority of cases hold that increased insurance premiums following an accident are too remote in the causation chain to be recoverable as damages.

In *Severn Place Associates v. Am. Bldg. Services, Inc.*, 930 So. 2d 125 (La. App. 5th Cir. 2006), the owner of an office building sustained flood damage when a janitorial service left water running in the sink. The building owner sued the janitorial service and sought damages in the amount of its increased insurance premiums. The trial court granted the janitorial service's

exception of no cause of action and the Louisiana Fifth Circuit affirmed. The Louisiana Fifth Circuit stated that damages in the form of increased insurance premiums were too remote. The building owner's insurance premiums increased because the building owner made a claim with its own insurer to more quickly repair its property. The building owner could, instead, have made the claim solely against the janitorial service. The court's holding was made "as a matter of policy."

In *Johnson v. Broomfield*, 580 N.Y.S.2d 122 (N.Y. Just. Ct. 1991), the plaintiff was injured in an automobile accident. As the result of the accident, which was not plaintiff's fault, he was placed in the "assigned risk pool" where premiums were higher than normal insurance rates. Citing the *Palsgraf* case, the court noted that:

> The principle that damages are recoverable only for such injuries as flow directly from, and as the probable and natural result of, the wrong complained of, necessarily excludes all those consequences of the act which are remote and indirect. No one is answerable in law for all the remote consequences of his own acts or of the acts of another for whom he is responsible.

*Id.* at 123. The court found that as a matter of law, the defendant could not have foreseen that the accident, wholly his fault, would result in the plaintiff having increased automobile insurance premiums. Further, the court noted that a major factor characterizing the damages as remote was that "the Defendant has no control over the Plaintiff's contractual relationships entered into or sought to be entered with Plaintiff's insurer, *i.e.* the purchase of automobile liability insurance."

The following cases concerning workers compensation insurance show that by far the predominant view throughout the country is that an increase in workers' comp premiums due to a third party's negligent injury to a company's worker is not a recoverable damage:

- *R.L. Whipple Co., Inc. v. Pondview Excavation Corp.*, 887 N.E.2d 1095 (Mass. App. 2008) – the loss the plaintiff sought to recover was the result of contract terms it negotiated with its insurer, not the accident.

- *Pro-Staffers, Inc. v. Premier Mfg. Support Services, Inc.*, 651 N.W.2d 811, 817 at n. 6 (Mich. App. 2002) – "when a defendant injures a plaintiff's employee, the nexus between that act and the plaintiff and its increased premiums and lost profits is simply too tenuous and remote…."

- *Higbie Roth Const. Co. v. Houston Shell & Concrete*, 1 S.W.3d 808, 812 (Tex. App.--Hous. [1st Dist.] 1999) – increased workers' compensation premiums as a result of defendants' injuring of plaintiff's worker were not foreseeable by defendants as a matter of law. In order to recover for increased premiums, plaintiff must have first shown a duty to prevent the increase – which it could not do.

- *RK Constructors, Inc. v. Fusco Corp.*, 650 A.2d 153 (Conn. 1994) – Even if defendant could have foreseen that by causing an accident to the plaintiff's employee, plaintiff's workers' compensation premiums would increase, the court determined as a matter of policy that the defendant's responsibility for its negligent conduct should not extend to this particular consequence. "[T]he economic harm to the plaintiff in the form of increased premiums and lost dividends is simply too remote to be chargeable to the defendant third party tortfeasor." *Id.* at 157.

- *Whirley Industries, Inc. v. Segel*, 462 A.2d 800 (Pa. 1983) – "[A]n increase in an employer's Workmen's Compensation premiums following an automobile

accident is not reasonably foreseeable by a driver. Moreover, insurance premium increases result from a concurrence of circumstances, including the owner's prior loss experience and the internal financial practices of the particular insurance carrier. The economic harm is too remote from the cause in fact to be attributable to the driver." *Id.* at 803.

One particularly thoughtful case is *Vogel v. Liberty Mut. Ins. Co.*, 571 N.W.2d 704 (Wis. App. 1997). There the court echoed the concern of the foregoing cases that the act of failing to drive carefully is too remote from the consequence of an increased worker's compensation premium to impose liability on the defendant. The court went on to consider at length the public policy reasons why liability should not be extended to increased insurance premiums and posed the following rhetorical questions:

> We affirm the trial court's decision that public policy bars this action, but base our decision on the public policy that in allowing this claim, we would be entering a field that has no sensible or just stopping point.
>
> If [plaintiff] is allowed to recover from a tortfeasor for increased premiums and lost dividends pertinent to a worker's compensation insurance policy that it is required to maintain by law, what next? Will every automobile driver in this state who gets into an auto accident and as a result has to pay an increase in auto insurance premiums be able to sue to recover those increased premiums? And if so, for how long will the tortfeasor have to pay for the increased premiums-for as long as the insurance company decides to charge or only for the following year? What happens if that same driver gets into multiple car accidents? Which tortfeasor pays which premium? And will the tortfeasor be expected to compensate the driver whose insurance company terminates the auto policy because the driver was involved in too many accidents?
>
> Will this recovery for increased premiums extend to homeowner's and renter's insurance policies? What about the numerous other types of insurance?
>
> These issues raise another problem relative to allowing the recovery sought. To what extent do other factors come into play?

> If the tortfeasor is found to be only partially responsible, will the tortfeasor only have to pay that percentage of the premium increase? With respect to the instant accident, would payment of the increased premiums be reduced by any percentage of negligence attributed to [the injured party]? What will happen where a case involves multiple tortfeasors?
>
> …..
>
> In sum, the position of [the] third-party plaintiff who suffered economic injury as a consequence of [its employee's] injuries, and the varying operating practices of insurance companies, lead this court to the conclusion that opening the door to these damages would enter a field with no sensible stopping point. Liability for damages, caused by a wrong, ceases at a point dictated by public policy and common sense.

*Id.*, 707-08 (Wis. App. 1997).

### IV.     Loss of the "no claims bonus" was not proximately caused by the Allision, nor did it "result from" an oil spill.

According to Cox's contentions, the loss of the no claims bonus was the result of contractual terms negotiated between Cox and its insurer. As such it was not a natural consequence of the Allision. The loss of the no claims bonus was remote from the Allision. Settoon had no means of foreseeing the particular provisions of Cox's policy. Additionally, Settoon had no control over the terms of Cox's insurance policy. Settoon had no control over whether Cox would or would not incur other claims during the same policy period in which the Allision occurred or whether, in the event Cox had other accidents during the policy period, Cox would choose to make a claim against its insurer or bear the damages itself without making a claim so as to preserve its no claims bonus or try to put the entire brunt of the no claims bonus on Settoon.

Cox did not have to make a claim against its own insurer. It could have made the claim simply against Settoon and Settoon's insurer, particularly since Cox takes the position that it was

entirely innocent in the Allision and that the Allision was entirely the fault of Settoon. Cox chose to make a claim against its own insurer for its own convenience to be paid more quickly. But had Cox refrained from making a claim against its own insurer, it would have preserved its no claims bonus. Unlike Settoon, who was a stranger to Cox's policy, Cox was a party to the insurance contract and is presumed to know its terms and would have realized that making a claim would result in the loss of its no claims bonus. Only Cox had control over whether it submitted a claim to its insurance company for this or any other potential incident that might have occurred during the policy year.

Finally, as stated in the *Vogel* case, "opening the door to these damages would enter a field with no sensible stopping point. Liability for damages, caused by a wrong, ceases at a point dictated by public policy and common sense." *Vogel*, 571 N.W.2d at 708. What would be the result if Cox itself is found partially at fault for the allision (due to lack of proper lighting)? What would be the result if Cox had another claim during the year? What would be the result if Cox had another accident during the year but chose not to make a claim in order to a) attempt to preserve its no claims bonus if the other accident occurred before the allision; or b) attempt to place the entire blame for the loss of the no claims bonus on Settoon if the other accident occurred after the allision? If this type of loss is recoverable, does the same result extend to homeowner's policies, automobile policies, and other types of insurance policies? As a matter of public policy and common sense, loss of the "no claims bonus" should not be recognized as a recoverable item of damages.

Under the proximate cause/duty-risk rubric of general maritime law as summarized by Schoenbaum, a tortfeasor should be liable only for reasonably foreseeable consequences of its conduct. Under the circumstances of this case, there is no possible way that Settoon could have

foreseen that Cox's policy would have included this particular no claims bonus provision. Moreover, "simply meeting the requirement of showing physical damage to a proprietary interest does not automatically open the door to all foreseeable economic consequences." *Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp.*, 71 F.3d 198, 203 (5th Cir. 1995). This loss of the no claims bonus did not flow directly from the damage done to Cox's Well. Rather, it resulted from the particular terms of the policy that Cox negotiated with its insurer.

Similarly, if analyzed under OPA, the loss of the no claims bonus did not "result from" a discharge of oil. It resulted from the no claims bonus provision in Cox's insurance policy. Presumably any type of claim made by Cox against its insurer would have vitiated the "no claims bonus" – not just a claim that included an element of oil discharge.

Under either standard, loss of a "no claims bonus" is not recoverable.

**V.     *In re Settoon Towing LLC*, No. 07-1263, 2009 WL 4730969 (E.D. La. Dec. 4, 2009) does not provide a basis for Cox's "no claims bonus" claim.**

Cox has indicated it intends to rely on *In re Settoon Towing LLC*, No. 07-1263, 2009 WL 4730969 (E.D. La. Dec. 4, 2009), as support for its "no claims bonus" claim. That case is not on point.

*In re Settoon Towing* is only facially similar to the instant case. There, a Settoon barge struck a well owned and operated by ExPert resulting in an uncontrolled spray of crude oil into a bayou. ExPert claimed a variety of damages under OPA. Among the ten items claimed were increased Control of Well coverage and other increased insurance costs. Settoon moved for partial summary judgment on these claims as speculative because ExPert had produced no supportive documentation. Earlier in the case the magistrate judge had issued a report and recommendation that these claims (and others) be dismissed for failure to present any supporting

documentation. Judge Lemmon held that ExPert would be allowed to present the claims at trial through testimony of its chief financial officer, even though it had presented no documentation. Judge Lemmon made the same ruling on multiple other claimed items of damage.

Significantly, Judge Lemmon did not consider or rule upon any legal argument as to whether such damages were recoverable in the first place. That issue was not raised by anyone and was not addressed by her. Her ruling was based solely on the proposition that damages could be presented via witness testimony without written documentation. This is apparent on the face of the opinion, but it is also evident in the argument made by Settoon in its motion for partial summary judgment. A copy of Settoon's memorandum in support in that case is attached here as Exhibit B. The increased Control of Well rate issue is addressed at page 9 of that memorandum, and the increased insurance costs are addressed at page 12 of that memorandum. A review of these sections proves that the only arguments made by Settoon in that case were that the damages were speculative because no documentation had been provided and the magistrate judge had therefore previously recommended they be dismissed. Not a single case as to the recoverability of increased insurance costs was cited or discussed.

Accordingly, Judge Lemmon did not rule on the legal merits of whether such damages are recoverable under general maritime law or OPA and the case is not applicable here.

## CONCLUSION

For the foregoing reasons, Settoon asserts that based upon the undisputed facts it is entitled to partial summary judgment as a matter of law dismissing Cox's damage claim for loss of its "no claims bonus."

Respectfully submitted,

*Tarak Anada*
JEFFERSON R. TILLERY (#17831)
C. BARRETT RICE (#30034)
TARAK ANADA (#31598)
JONES WALKER LLP
201 St. Charles Avenue
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8238
Facsimile: (504) 589-8238
E-Mail: jtillery@joneswalker.com
brice@joneswalker.com
tanada@joneswaker.com

*Attorneys for Defendants, Settoon Towing, L.L.C., in personam and the Tug M/V Megan B. Settoon and her tow Barge SMI-245, their engines, rigging, tackle etc., in rem*

## CERTIFICATE OF SERVICE

On the 21st day of February, 2018, I electronically filed the foregoing motion and attachments with the Clerk of Court using the CM/ECF System, which will send notification of such filing to all counsel of record.

*/s/ Tarak Anada*
TARAK ANADA