**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

COX OPERATING, L.L.C.                                      CIVIL ACTION

VERSUS                                                               No. 17-1933

SETTOON TOWING, LLC ET AL.                          SECTION I

ORDER AND REASONS

The parties accept the following facts as true for purposes of the present motion.[1]

In September 2016, plaintiff Cox Operating, L.L.C. ("Cox") owned a well in Quarantine Bay, Plaquemines Parish. Cox had this well insured. The insurance policy covering the well at that time provided that "a 10% No Claims Bonus [was] payable at expiry subject to total gross earned premium exceeding USD2,000,000 hereon."[2] Thus, if Cox did not submit any claims under such policy, then the insurer would refund Cox 10% of Cox's total premium amount for the policy period, assuming that total premium amount exceeded $2,000,000, which it did. On the other hand, if Cox did submit a claim, then no such refund would issue.

A vessel owned by defendant Settoon Towing, LLC ("Settoon") allided with the well on September 13, 2016. As a result of this allision, Cox submitted a claim under the policy and became obligated to repay the "no claims bonus," which the insurer

---

[1] Settoon explicitly noted that it accepted these facts as true *only* for purposes of the present motion. R. Doc. No. 34-1, at 1.
[2] R. Doc. No. 70-1, at 10.

had prepaid to Cox.[3] This claim was the only claim that Cox filed during the policy period.

Before the Court is a motion for partial summary judgment filed by Settoon Towing, LLC ("Settoon"), which plaintiff Cox Operating, L.L.C. ("Cox") opposes. Settoon's motion raises two legal questions:

1. Is Cox precluded, as a matter of law, from pursuing recovery of the "no claims bonus"?

2. If no, then does the collateral source rule bar Settoon from introducing evidence of a second insurance policy held by Cox that insured it against the loss of the "no claims bonus"?

After considering the parties' arguments and the applicable law, the Court answers no to the first question, and yes to the second.

**I.**

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines that there is no genuine dispute of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point

---

[3] *See* R. Doc. No. 34-2, at 1.

out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its initial burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue of material fact is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* However, the nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

Moreover, "[a]lthough the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . , the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017) (quoting 11 Moore's Federal Practice–Civil ¶ 56.91 (2017)). "This flexibility allows the court to

consider the evidence that would likely be admitted at trial . . . without imposing on parties the time and expense it takes to authenticate everything in the record." *Maurer v. Independence Town*, No. 16-30673, 2017 WL 3866561, at *3 (5th Cir. Sept. 5, 2017).

## II.

## A.

Settoon argues that Cox cannot recover the "no claims bonus" under either general maritime law or the Oil Pollution Act ("OPA"). In its opposition, Cox focuses on the recoverability of the "no claims bonus" under general maritime law, and it only mentions the OPA in the process of explaining its strict statutory obligation to pay response costs arising from the allision.[4] Because Cox did not address Settoon's argument that the "no claims bonus" is unrecoverable under the OPA, the Court considers the argument uncontested and any such opposition to be waived. Therefore, the Court will only consider whether the "no claims bonus" is recoverable under general maritime law.

Settoon argues that "as a matter of law the 'no claims bonus' predicated on the insurance contract between Cox and its underwriters is not a recoverable element of damages."[5] Likening the "no claims bonus" to an increased insurance premium, Settoon contends that "the overwhelming majority of cases hold that increased insurance premiums following an accident are too remote in the causation chain to

---

[4] *See generally* R. Doc. No. 36.
[5] R. Doc. No. 34-1, at 1.

4

be recoverable as damages."[6] Settoon then discusses a series of opinions issued by a number of state courts, the majority out-of-circuit, to support this proposition.[7] Notably, however, Settoon does not point to any Fifth Circuit cases holding that such damages are per se unavailable under general maritime law.

For its part, Cox analogizes the "no claims bonus" to a deductible, which it argues "is clearly recoverable as an element of damages" under general maritime law.[8] Moreover, Cox contends that, "even if [it] were making a claim for increase[d] [ ] insurance premiums . . ., no case law exists prohibiting such claims under general maritime law where a plaintiff has suffered physical damage to its property; and to the contrary, the implications of the most analogous cases support [ ] the viability of such a claim."[9]

**B.**

Following the Fifth Circuit's opinion in *Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019 (5th Cir. 1985) (en banc), "physical injury to a proprietary interest is a prerequisite to recovery of economic damages in cases of unintentional maritime tort." *Reserve Mooring Inc. v. Am. Commercial Barge Line, LLC*, 251 F.3d 1069, 1072 (5th Cir. 2001); *see also Corpus Christi Oil & Gas Co. v. Zapata Gulf*

---

[6] *Id.* at 4; *see also id.* at 9 ("Under the proximate cause/duty-risk rubric of general maritime law as summarized by [Thomas J.] Schoenbaum, a tortfeasor should be liable only for reasonably foreseeable consequences of its conduct."). In his reply, Settoon returns to the issue of remoteness. *See* R. Doc. No. 41, at 3-5.

[7] *See id.* at 4-8. Settoon acknowledges that "there appear to be no cases precisely on point [with respect to] a 'no claims bonus.'" *Id.* at 4. Cox acknowledges the same. *See* R. Doc. No. 36, at 4.

[8] *Id.* at 7.

[9] *Id.* at 6 (emphasis removed).

*Marine Corp.*, 71 F.3d 198, 201 (5th Cir. 1995) (noting that, pursuant to *TESTBANK*, "an admiralty plaintiff cannot recover negligently inflicted economic losses where there is no physical damage to the plaintiff's property"). The Fifth Circuit has described this rule, which derives from *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927), as a "pragmatic limitation . . . upon the tort doctrine of foreseeability." *TESTBANK*, 752 F.2d at 1023.

Interpreting the *TESTBANK* rule in *Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp.*, 71 F.3d 198 (5th Cir. 1995), the Fifth Circuit further held that "simply meeting the requirement of showing physical damage to a proprietary interest does not automatically open the door to all foreseeable economic consequences." 71 F.3d at 203. Rather, "economic consequences" must be "attendant" to the physical damage to a plaintiff's own property to be recoverable economic damages under *TESTBANK*. *Id.* In *Corpus Christi Oil & Gas*, the Fifth Circuit determined that the appellant's "claimed economic loss was not 'attendant' to the physical damage to [its] proprietary interest," but "was instead occasioned only by the physical injury to [another entity's] riser, property in which [the appellant] had no proprietary interest." *Id.*

Based on the facts that are undisputed for purposes of the present motion, Cox satisfies *TESTBANK*'s prerequisites to opening the door to the recoverability of the "no claims bonus." The alleged damage to Cox's well constitutes physical damage to Cox's own property. *Cf. Consol. Aluminum Corp. v. C.F. Bean Corp.*, 772 F.2d 1217, 1222 (5th Cir. 1985) (concluding that *TESTBANK*'s limitation on the recovery of

economic damages did not apply, because the plaintiff "plainly suffered physical harm to property in which it has a proprietary interest—*i.e.*, its own equipment for deriving aluminum"). Further, Cox's loss of the "no claims bonus" is tied to the physical damage to Cox's well. *See Corpus Christi Oil & Gas*, 71 F.3d at 203 (noting, first, that *TESTBANK* "strongly suggests that recoverable losses somehow be tied to the damage to the *plaintiff's* property" and then applying this understanding of *TESTBANK* to the present case (emphasis in original)).

Whether the Court classifies the "no claims bonus" as an increased insurance premium or as a deductible is of no moment for purposes of *TESTBANK*. If the plaintiff suffered physical damage to its property, and if the plaintiff suffered an economic loss that is attendant to that damage, then all of the *TESTBANK* rule's boxes have been checked.

In addition, even if the Court adopted Settoon's line and treated the "no claims bonus" as equivalent to an increased insurance premium,[10] at least one Fifth Circuit opinion seems to suggest that recovery would not be per se barred. In *American River Transportation Co. v. KAVO KALIAKRA SS*, 206 F.3d 462 (5th Cir. 2000), the Fifth Circuit faced a situation in which a party sought to recover for "new higher [workers

---

[10] The "no claims bonus," however, did not represent an increase in insurance premiums between policy periods, which may result from numerous considerations on the part of an insurer. Further, Cox did not pay the "no claims bonus" over to the insurer in order to continue the policy after the expiration of the policy period or in order to purchase future insurance coverage. Rather, the "no claims bonus" represented a sum certain that Cox had to forfeit over to its insurer upon filing a claim under the policy; recovery under the policy turned on forfeiture of the "no claims bonus."

compensation insurance] premiums" that it blamed on an allision.  206 F.3d at 464.

Denying recovery, the Fifth Circuit explained:

> Assuming that Compass's higher premiums did result in some finite sense from the M/V KALIAKRA's negligence, Compass's claims are barred under our general rule.  These economic damages are traceable only to the personal injuries of Compass's employees, but Compass has no property interest in its employees in any relevant sense.  Compass did have a property interest in a few thousand dollars['] worth of equipment which fell overboard during the accident, but Compass's claimed economic damages are unrelated to the loss of that equipment.

*Id.*  Tellingly, the Fifth Circuit in *KAVO KALIAKRA* did not simply state that increased insurance premiums are per se unrecoverable under general maritime law and leave it at that.  In fact, its approach to the inquiry seems to suggest that increased insurance premiums *are* recoverable under the right circumstances.

Lastly, the Court must consider Settoon's argument that the "no claims bonus" was unforeseeable as a matter of law.[11]  According to Settoon, it "had no means of foreseeing the particular provisions of Cox's policy," and it had no control over whether Cox would file a claim under the policy.[12]  (Settoon faults Cox for filing a

---

[11] Foreseeability may bar recovery even where the *TESTBANK* rule has been met. *See In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 380 (5th Cir. 2006) ("Moreover, even if we were to conclude that Mason's and Advanced Materials's inability to sell their products qualified as physical damage for purposes of *TESTBANK*, they would not be entitled to recover because their damages were not foreseeable."); *Consol. Aluminum Corp.*, 772 F.2d at 1224 ("We therefore conclude that the district court erred in granting summary judgment in favor of Bean.  The 'pragmatic limitation upon the tort doctrine of foreseeability,' derived from *Robins* and *TESTBANK*, does not apply to the instant case.  While defendant Bean urges this Court to determine '[u]nder a traditional tort analysis [that] Consolidated's harm [is] . . . too remote,' we leave the determination of the foreseeability of Consolidated's injury for the trial court to determine on remand.").
[12] R. Doc. No. 34-1, at 8.

claim under its own policy rather than attempting to file a claim against Settoon and Settoon's insurer.[13]) In Settoon's view, the "no claims bonus" was thus unforeseeable.

"To be foreseeable, the harm alleged must bear some proximate relationship with the negligent conduct such that it can reasonably be said to be within the 'scope of the risk' created by that conduct." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 212 (5th Cir. 2010). In this case, Settoon's vessel allided with Cox's well. It is beyond dispute that the damage to the well was a foreseeable consequence of this allision. Moreover, a reasonable person would expect a business such as Cox to insure itself against the loss of its property and against harm that its property may cause, but would also understand that insurance may not make an insured whole, depending on the details of the relevant insurance policy. *See Consol. Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 68 (5th Cir. 1987) ("We perceive a harm to be a foreseeable consequence of an act or omission if harm of a general sort to persons of a general class might have been anticipated by a reasonably thoughtful person, as a probable result of the act or omission, considering the interplay of natural forces and likely human intervention"). A reasonable person would also expect a business to avail itself of its purchased insurance when the need arises.

Cases under general maritime law in which the Fifth Circuit has denied recovery on foreseeability grounds appear to involve harms that are several steps removed from the tortious act giving rise to the lawsuit. For example, in *In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371 (5th Cir. 2006), the Fifth Circuit faced a

---

[13] *See id.* at 8-9.

situation in which a "barge allided with a bridge, causing the release of gas, which resulted in a mandatory evacuation during which the law enforcement officials turned off the electricity." 444 F.3d at 381. The electricity shutoff allegedly resulted in the premature termination of a company's manufacturing run and the spoiling of a second company's crabs. *Id.* at 377. According to the Fifth Circuit, "[t]he spoiling of [the] crabs and the premature shut down of [the] manufacturing run due to the evacuation and loss of electricity were simply not foreseeable results of the release of the gaseous cargo." *Id.* at 381. Cox's loss of the "no claims bonus" does not fit this mold.

Settoon has not demonstrated that Cox is legally precluded from seeking recovery of the "no claims bonus." As such, summary judgment in Settoon's favor is unwarranted.

### III.

In light of the Court's conclusion vis-à-vis the "no claims bonus," the Court must also address an issue raised by supplemental memoranda filed by the parties: does the collateral source rule bar Settoon from introducing evidence of a second insurance policy held by Cox that insured it against the loss of the "no claims bonus"?[14]

---

[14] *See* R. Doc. No. 45; R. Doc. No. 49. It appears that Cox itself never had to repay the "no claims bonus." Instead, Cox has indicated that the insurer that insured the well and the insurer that insured Cox against the loss of the "no claims bonus" simply handled the matter of repayment among themselves. *See* R. Doc. No. 49, at 2.

"The collateral source rule is a substantive rule of law that bars a tortfeasor from reducing the quantum of damages owed to a plaintiff by the amount of recovery the plaintiff receives from other sources of compensation that are independent of (or collateral to) the tortfeasor." *Davis v. Odeco, Inc.*, 18 F.3d 1237, 1243 (5th Cir. 1994).

> One underlying rationale for the collateral source rule is that plaintiffs should not be penalized because they had the foresight and prudence (or good fortune) to establish and maintain collateral sources of compensation. If tortfeasors could set off compensation available to plaintiffs through collateral sources, then plaintiffs who pay their own insurance premiums would suffer a net loss because they would derive no benefit from any premiums paid. Additionally, such plaintiffs might be left exposed to other misfortunes once their insurance coverage was depleted by the tortfeasors' negligence. Moreover, even when third parties pay the compensation for plaintiffs' injuries, such payment should not have the effect of giving a windfall to tortfeasors. The liability of tortfeasors should not be excused or reduced simply because other sources of compensation are available. Permitting tortfeasors to set-off compensation available to plaintiffs from collateral sources would allow them to escape bearing the costs of their own conduct.

*Id.* at 1243 n.21 (internal citations omitted). To give effect to the collateral source rule, courts enforce "an evidentiary rule that proscribes introduction of evidence of collateral benefits out of a concern that such evidence might prejudice the jury." *Id.* at 1243.

With respect to what constitutes a "collateral source," the Fifth Circuit has noted that "[s]ources of compensation that have no connection to the tortfeasor are inevitably collateral." *Id.* at 1244. Insurance purchased by a plaintiff clearly falls within this definition. *See Phillips v. W. Co. of N. Am.*, 953 F.2d 923, 930 (5th Cir. 1992) ("The rule's formulation—that the plaintiff's recovery is not subject to a setoff for benefits independent of the tortfeasor—leads to the straightforward conclusion

that medical insurance, disability insurance and other forms of protection purchased by the plaintiff, as well as gifts the plaintiff receives, cannot reduce recovery.").

In light of the clear dictates of the collateral source rule, the Court concludes that Settoon cannot introduce—and the Court cannot consider—evidence that Cox insured against the loss of the "no claims bonus."

**IV.**

For the foregoing reasons,

**IT IS ORDERED** that Settoon's motion for partial summary judgment is **DENIED**.

New Orleans, Louisiana, May 31, 2018.

LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE