**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **COX OPERATION, L.L.C.** | **CIVIL ACTION** |
| **VERSUS** | **No. 17-1933**<br>**c/w 17-2087** |
| **SETTOON TOWING, L.L.C., ET AL.** | **SECTION I**<br>**REF: ALL CASES** |

## ORDER & REASONS

Before the Court is a motion[1] *in limine* filed by plaintiff Cox Operating, L.L.C. ("Cox") to exclude certain evidence. Specifically, Cox moves to exclude evidence regarding: Settoon Towing L.L.C.'s ("Settoon") experts' post-allision inspections of Quarantine Bay; witness statements included in Settoon expert Captain Fazioli's report; and alleged subsequent remedial measures. For the following reasons, the motion is denied in part and deferred in part.

### I. Settoon Experts' Post-Allision Inspections of Quarantine Bay

On September 13, 2016, a vessel owned by Settoon allided with one of Cox's wells in Quarantine Bay (Well 149D, "the Well"). One of Settoon's affirmative defenses to liability is that any loss stemming from the allision resulted from Cox's negligence in failing to properly light the Well.[2] In March and April of 2018, two of Settoon's experts, Michael Nunez ("Nunez") and Marc Fazioli ("Fazioli"), conducted investigations of the Quarantine Bay field, and both experts relied on those

---

[1] R. Doc. No. 76.
[2] R. Doc. No. 4, at 8.

inspections in preparing their reports.[3] In Nunez's report, he explained that, during the April inspection, he "boarded Cox's two manned platforms in the field . . . to view the navigation lights at full darkness."[4] Nunez stated that he "was unable to adequately conduct an accurate visual inspection of the operability of the navigation lights from either position; it was difficult to differentiate between the over 100 blinking lights."[5] He therefore concluded that "Cox's in-house visual inspection system . . . was entirely inadequate to ensure reliable and functioning navigation lights."[6] Fazioli's report reads similarly. In his opinion, based in part on his observations during the March and April inspections, "a 'visual' check of the navigation aids / obstruction lights . . . would be an ineffective method to appropriately determine the functionality of the obstruction lights within Quarantine Bay."[7]

Cox contends that these observations are meant not only to discredit Cox's navigation aid light inspection system but also to negate Cox personnel's claims that they could see the Well's light and differentiate it from the other lights in the field on the night of the allision.[8] Cox now moves to exclude evidence related to the inspections under Federal Rules of Evidence 401–403 and 702.[9]

---

[3] R. Doc. No. 76-2, at 5; R. Doc. No. 76-3, at 4–6.
[4] R. Doc. No. 76-1, at 3.
[5] *Id.*
[6] R. Doc. No. 76-2, at 5.
[7] R. Doc. No. 76-3, at 13.
[8] R. Doc. No. 76-1, at 4.
[9] *Id.* at 3, 7. With respect to the post-allision inspections, Cox does not actually cite Rule 702. Instead, Cox relies on a case decided by another section of this court, *Francois v. Diamond Offshore Co. Id.* at 7. Cox quotes *Francois* to explain that the

Under Rule 402, only relevant evidence is admissible. Fed. R. Evid. 402. And Rule 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "[T]he standard of relevance in an evidentiary context is not a steep or difficult one to satisfy." *Pub. Emps. Retirement Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 321 (5th Cir. 2014). However, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 356 (5th Cir. 2010) (citation omitted).

Rule 702 governs the admissibility of expert witness testimony. *See Daubert v. Merrell Dow Pharms., Inc.* 509 U.S. 758, 588 (1993). The rule provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;

---

Federal Rules of Evidence permit an expert "with scientific, technical or other specialized knowledge to testify if such testimony will assist the trier of fact to understand the evidence or determine a fact in issue." *Francois v. Diamond Offshore Co.*, No. 11-2956, 2013 WL 654635, at *1 (E.D. La. Feb, 21, 2013) (Morgan, J.) (internal quotations omitted). However, the quoted language comes verbatim from Rule 702.

3

(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

The U.S. Supreme Court has explained that Rule 702 grants district judges gatekeeping power "to ensure that [expert] testimony is both reliable and relevant." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (internal quotations and citation omitted). Rule 703 states that "an expert's opinion should be admissible so long as the sources underlying that opinion are of a type reasonably relied on by experts in the field." *See First United Fin. Corp. v. U.S. Fidelity & Guar. Co.*, 96 F.3d 135, 138–39 (5th Cir. 1996) (summarizing Rule 703).

Cox argues that the inspections are irrelevant because they were conducted over a year and a half after the allision, "with different weather conditions[,] from different vantage points."[10] Because of these differences, Cox contends that any opinions based on the inspections could not possibly help the trier of fact in determining whether the Well was lit or distinguishable from other lights on the night of the allision.[11]

Cox also argues that any testimony from Settoon's experts based on the March and April 2018 inspections should be excluded because it would violate Rule 703's requirement that the sources "underlying" expert opinions be "of a type reasonably relied on by experts in the field."[12] Cox does not affirmatively claim that post-accident

---

[10] *Id.* at 2, 8.
[11] *Id.* at 8.
[12] *Id.* at 7.

4

inspections fall outside of this "type" of accepted evidence. Instead, Cox merely notes that "Settoon has made no allegation that an inspection of the condition of oilfield lights . . . a year and a half after an allision . . . is the type of evidence that is 'reasonably relied upon by an expert' in the field of navigation or navigational lights."[13]

In response to Cox's assertion that the inspections are irrelevant, Settoon argues that the inspections go directly to its defense that the light was not working when the allision occurred and refute testimony presented by Cox.[14] Furthermore, according to Settoon, Cox cannot claim the inspections are irrelevant because Cox has not articulated a single difference between the conditions of the field at the time of the inspections and the conditions of the field at the time of the allision.[15] Settoon claims that the evidence will show that Quarantine Bay looked the same at the time of the inspections as it did on the night of the allision.[16]

The Fifth Circuit recognizes that, "as a general rule, questions relating to the bases and sources of an expert's opinion affect the *weight* to be assigned that opinion rather than its *admissibility*." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563 (5th Cir. 2004) (internal quotations and citation omitted); *In re M&M Wireline & Offshore Servs., LLC*, No. 15-4999, 2017 WL 480603, at *788 (E.D. La. Feb. 3, 2017) (Brown, J.) (denying a motion to exclude expert witness testimony in

---

[13] *Id.* at 7.
[14] R. Doc. No. 80, at 5.
[15] *Id.* at 6.
[16] *Id.* at 2.

5

which the movant argued that the expert's conclusions were unfounded). "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system: Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996) (quoting *Daubert*, 509 U.S. at 596). If the Quarantine Bay landscape was significantly different at the time of the inspections than it was over one year earlier when the allision occurred, Cox can establish those differences and illuminate the flaws in Settoon's experts' testimony at trial. This portion of Cox's motion is denied.

## II. Captain Fontaine's Statements Contained in Captain Fazioli's Expert Report for Settoon

Cox also moves to exclude certain statements made by Captain William Scott Fontaine ("Fontaine") to Captain Fazioli, who is an expert witness for Settoon. On March 30, 2018, Fazioli went to Quarantine Bay to inspect the field.[17] To conduct the inspection, Fazioli rented a boat from Abe's Boat Rentals captained by Fontaine, who otherwise has no connection to this case.[18] In the portion of his expert report in which he details his inspection, Fazioli describes a conversation he allegedly had with Fontaine.[19]

---

[17] R .Doc. No. 76-3, at 4.
[18] *Id.* at 4; R. Doc. No. 76-4, at 1; R. Doc. No. 80, at 10–11.
[19] R. Doc. No. 76-3, at 4–5.

6

According to Fazioli, Fontaine told him that in September of 2016—the same month and year when the allision occurred in this case—he almost hit an unlit platform in the field while trawling at night.[20] Fazioli's report states that he then showed Fontaine a picture of the Well, and Fontaine confirmed that the Well was located on the platform he nearly hit.[21] The two men allegedly reviewed Fontaine's Google Maps history, which Fazioli claims confirmed that Fontaine was "crisscross[ing] Quarantine Bay" in September 2016.[22] Settoon contends that, at this point, Fontaine became not just an expert witness for Settoon but also a fact witness.[23]

Cox argues that any testimony from Fazioli based on the alleged conversation between him and Fontaine should be excluded because such testimony is "indisputably wrong."[24] During a deposition hearing on April 26, 2018, Fontaine testified that he saw the light that was "out" in 2017—not 2016.[25] He also testified that Fazioli had never showed him a picture of the Well.[26] Cox argues that this explicit refutation of the conversation in Fazioli's report makes that portion of the

---

[20] *Id.* at 5.
[21] *Id.*
[22] *Id.*
[23] R. Doc. No. 80, at 11.
[24] R. Doc. No. 76-1, at 8.
[25] R. Doc. No. 76-4, at 3, 12. After learning about the conversation between Fazioli and Fontaine on March 18, 2018, Settoon contacted Fontaine's employer, Abe's Boat Rentals, to set up an interview with Fontaine. R. Doc. No. 80, at 11. However, an Abe's employee allegedly told Settoon that the company did not want to get involved because they perform a significant amount of work for Cox. *Id.* Settoon then deposed Fontaine. *Id.*
[26] R. Doc. No. 76-4, at 5.

7

report "meaningless." Cox argues that "expert evidence based on a fictitious set of facts" is properly excluded because it "result[s] in pure speculation." *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996).

In response, Settoon argues that the factual basis of an expert's opinion goes to the testimony's weight, not its admissibility, so the Court should deny this part of Cox's motion.[27] Settoon also argues that the facts underlying an expert's report do not need to be admissible for the opinion to be admitted.[28] Rule 703 permits an expert to base an opinion on facts that might otherwise be inadmissible at trial "*if* the experts in the particular field would reasonably rely on those kinds of facts." Fed. R. Evid. 703 (emphasis added). Settoon contends that Fontaine's statements meet this criterion. Finally, Settoon argues that Fazioli's testimony about what Fontaine told him will nonetheless be admissible at trial as impeachment testimony.[29]

After reviewing both parties' arguments, the Court identifies two issues with respect to the alleged conversation—first, whether the conversation is admissible at trial for impeachment purposes. What Fontaine allegedly told Fazioli is not "indisputably wrong" but, rather, in dispute because Fontaine has offered conflicting accounts of what he saw when. Settoon has represented to the Court that it plans to call Fontaine to testify at trial about when he almost hit the unlit platform.[30] If what Fontaine testifies to at trial is contrary to what he allegedly told Fazioli, Fazioli will

---

[27] R. Doc. No. 80, at 12.
[28] *Id.*
[29] *Id.*
[30] *Id.* at 11.

8

then be permitted to testify about any conversation he had with Fontaine—not as an expert witness but as a lay witness for impeachment purposes.[31] The second issue is whether the conversation serves as an adequate basis for Fazioli's expert opinions. "[Q]uestions relating to the bases and sources of an expert's opinion affect the *weight* to be assigned that opinion rather than its *admissibility*." *Primrose Operating Co.*, 382 F.3d at 563. Moreover, the Court has confidence in its ability to evaluate Fontaine's testimony and weigh his credibility at trial. Based on this evaluation, the Court will be able to determine the weight to be given Fazioli's testimony as an expert witness. As a result, Cox's request to exclude evidence regarding any conversation between Fazioli and Fontaine contained in Fazioli's report is deferred until trial. At that time, the Court will be in a better position to evaluate the context and purpose for which the conversation is offered.

### III. Cox's Subsequent Remedial Measures

Finally, Cox moves to exclude evidence that it engaged a third-party contractor to annually inspect its navigational lights in Quarantine Bay. Cox argues that such engagement is a subsequent remedial measure and must be excluded under Federal Rule of Evidence 407 if relied upon by Settoon to suggest that Cox's pre-allision navigation aid light procedures were negligent.[32]

Rule 407 provides that

---

[31] The Court does not speculate whether it will allow Fazioli to testify about the alleged conversation if Fontaine is not called as a witness at trial, although the Court cannot now identify any legal basis for which such testimony would be permitted.
[32] R. Doc. No. 76-1, at 10.

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction. But the court may admit this evidence for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures.

Fed. R. Evid. 407. The primary justification for Rule 407 is the "social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." Fed. R. Evid. 407 advisory committee's note to 1972 proposed rules. "The rule also seeks to ensure that negligence is properly determined according to what the defendant knew or should have known *prior to the accident*, not what the defendant knew as a result of the accident." *Adams v. Chevron USA, Inc.*, 383 F. App'x 447, 452 (5th Cir. 2010).

In its opposition, Settoon asserts that, because Cox engaged the third-party contractor "*prior* to the accident," Rule 407 is inapplicable.[33] The Court agrees. "By definition, the rule excludes only post-accident remedial measures. . . ." *Brazos River Auth. v. GE Ionics, Inc.*, 464 F.3d 416, 429 (5th Cir. 2006) (holding that the district court erred in excluding evidence of design changes and investigations that started before the accident underlying the case). Consequently, Cox's request to exclude evidence about its engagement of a third-party contractor to conduct inspections of its navigation aid lights is denied with respect to any contractor engaged before the allision.

For the foregoing reasons,

---

[33] R. Doc. No. 80, at 13.

10

**IT IS ORDERED** that Cox's request to exclude evidence based on Settoon experts' post-allision inspections of Quarantine Bay is **DENIED**.

**IT IS FURTHER ORDERED** that Cox's request to exclude the statements allegedly made by Captain Fontaine to Captain Fazioli on March 30, 2018 is **DEFERRED** until trial.

**IT IS FURTHER ORDERED** that Cox's request to exclude evidence that it engaged a third-party contractor to inspect its navigation aid lights is **DENIED**.

New Orleans, Louisiana, June 26, 2018.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**